**WALTHER, Appellee and Cross–Appellant,**

**v.**

**WALTHER, Appellant and Cross–Appellee.**

[Cite as *Walther v. Walther* (1995), 102 Ohio App.3d 378.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–930681, C–940028.

Decided April 5, 1995.

*William A. Busemeyer*, for appellee and cross-appellant.

*Wagner & Bloch* and *Harold Wagner*, for appellant and cross-appellee.

MARIANNA BROWN BETTMAN, Judge.

These appeals[1] involve a wife who had second thoughts about an in-court settlement agreement she had accepted in a divorce case. The primary issue is whether the trial court erred in accepting a finding by the referee that the in-court settlement agreement should be enforced and incorporated into the decree of divorce.

Richard E. Walther, plaintiff-appellee and cross-appellant ("Husband"), initiated divorce proceedings against Sharon L. Walther, defendant-appellant and cross-appellee ("Wife"). On June 25, 1992, both appeared at a scheduled property hearing before a referee. Both were represented by counsel. Instead of litigating the property issues and awaiting recommendations by the referee, the parties instead chose to enter into a settlement agreement (the "in-court settlement agreement"). All of the assets and liabilities of the parties were described and allocated. All matters of property, spousal support, custody, child support and legal fees and costs were agreed to. Both parties stated on the record, in the presence of their counsel and the referee, that they understood the terms of the agreement, that they found the terms to be fair and equitable, and that they waived their right to a property hearing, and indicated their wish to have the agreement incorporated into the final decree of divorce.

Following the in-court settlement agreement, a request for a merit hearing was filed. Under Loc.R. 1.17 of the Hamilton County Court of Common Pleas, Domestic Relations Division, a merit hearing cannot be set without an entry stating that all matters pertaining to alimony, support, parenting, and property have been resolved. Both counsel signed such an entry and a merit hearing date was set for August 4, 1992.

At the scheduled merit hearing, Wife refused to proceed. She refused to sign a copy of a divorce decree which incorporated all the terms of the June 25 in-court settlement agreement. She claimed that she did not want to agree to the in-court settlement, found it unfair and inequitable, and signed it only on the insistence of her lawyer.

The trial court referred the matter back to the referee for an express determination of whether the June 25 in-court settlement agreement should be enforced. Before this hearing, Wife changed counsel. Her new counsel made a series of motions on her behalf, all of which were overruled. This hearing eventually took place on February 3, 1993. The referee made it clear that this hearing was not a reopening of the property hearing, or a fairness hearing, but

---

1. Appeal No. C–940028, originally placed on this court's accelerated calendar, is *sua sponte* removed and placed on the regular calendar.

rather solely a determination of whether there had been fraud, coercion, or undue influence in reaching the in-court settlement agreement of June 25, 1992.

The referee found that Wife had failed to show fraud, failure to disclose, coercion or undue influence by Husband. She further found that the agreement was valid, and recommended that the June 25 in-court settlement agreement be enforced and made a part of the divorce decree. The referee also recommended that Husband receive $6,000 in attorney fees from Wife. The trial court accepted these recommendations and on August 31, 1993, granted a decree of divorce which included the entire in-court settlement agreement. The decree was journalized September 8, 1993, and Wife filed this appeal.

To protect Wife's marital interests in a parcel of real property if this court were to reverse the decree of divorce, the trial court ordered Husband, the prevailing party, to place $26,000 in escrow. Husband filed a cross-appeal on this point.[2]

In her first assignment of error, Wife claims the trial court erred in not holding a hearing on Husband's alleged failure to file a formal trial brief. The assignment is overruled. Even if we assume that pursuant to Loc.R. 1(A) of the Hamilton County Court of Common Pleas, formal pretrial requirements are followed in the Domestic Relations Division, in the entry in which Wife alleges error, the court did not journalize an order for a pretrial conference, but merely set the matter for report. The court did not require the filing of a pretrial statement or formal trial briefs. Loc.R. 15(B) and 10(C).

■ Wife's second assignment of error, in which she claims the trial court erred in overruling her motion for declaratory relief, is without merit. In the exercise of its discretion, a court may refuse to entertain a claim for declaratory judgment as to questions which are otherwise determinable in a pending action between the same parties. R.C.Chapter 2721; *State ex rel. Dickison v. Court of Common Pleas* (1971), 28 Ohio St.2d 179, 180, 57 O.O.2d 411, 411, 277 N.E.2d 210, 211; *Fuller v. German Motor Sales, Inc.* (1988), 51 Ohio App.3d 101, 103, 554 N.E.2d 139, 142; *Arbor Health Care Co. v. Jackson* (1987), 39 Ohio App.3d 183, 530 N.E.2d 928.

■ Wife's third assignment of error is overruled as Civ.R. 52 does not require the trial court, in ruling on a motion to entertain declaratory relief, to make separate findings of fact and conclusions of law. The court was not acting as a fact finder in exercising its discretion not to entertain such a motion; therefore, it was not obligated to make such findings. Civ.R. 52; see, *e.g., Stanton v. Miller*

---

2. Husband's cross-appeal is numbered C–940028. The appeals were consolidated by this court.

(1990) 66 Ohio App.3d 201, 206, 583 N.E.2d 1080, 1083 (motion made pursuant to Civ.R. 56).

The gravamen of Wife's appeal is found in her fourth, fifth, sixth, and seventh assignments of error. Wife argues in these assignments of error, in slightly different fashion, that the trial court erred in journalizing a divorce decree which incorporated an in-court settlement agreement without a finding that the agreement was fair and equitable. We disagree.

When a husband and wife end their marriage, they have a fundamental choice to make about the division of property, the allocation of parental responsibilities, and support. The parties can reach an agreement as to these issues or the parties can litigate them and have the domestic relations court decide the issues.

There are different avenues for the parties to come to their own agreement about the division of their property, allocation of parental rights and responsibilities, and support.[3] They can enter into a separation agreement pursuant to a dissolution of marriage, they can enter into a separation agreement pursuant to a divorce, or they can enter into an in-court settlement agreement. All are contracts and all are permissible. R.C. 3103.05 and 3103.06; see, also, Baldwin's Ohio Domestic Relations Law (1992), Section 9.10; *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, 60 O.O.2d 20, 285 N.E.2d 324; *Mack v. Polson Rubber Co.* (1984), 14 Ohio St.3d 34, 14 OBR 335, 470 N.E.2d 902. The role of the court differs slightly in each context. See, *e.g.*, R.C. 3105.65(A) (dissolution) and 3105.10(B)(2) (divorce).

All three types of agreement share a common element. They are agreements in lieu of a trial and adjudication by the court. In the absence of any of these forms of agreement, the court will divide the property for the parties.

■ In a trial, the court is obligated to make a division based on principles of equitable distribution. R.C. 3105.171.[4] This does not necessarily mean equal distribution, only fair and equitable distribution. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293; *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197. Nevertheless, implicit in a property hearing is a requirement that the division be fair and equitable. *Id.*, paragraph two of the syllabus.

---

3. The assignments of error in this case deal only with issues of the division of property, not issues of custody or spousal support. Thus, in this opinion, we will refer only to a property division.

4. Under present law, the division of marital property is now separate from spousal support. R.C. 3105.171 and 3105.18. The principles of *Cherry* and *Kaechele, infra,* are still applicable, however.

On the other hand, a contract does not have to be fair or equitable to be enforceable. Contracts, including settlement agreements, can be unfair or favor one side over the other. *Krueger v. Schoenling Brewing Co.* (1948), 82 Ohio App. 57, 61, 37 O.O. 375, 377, 79 N.E.2d 366, 368. They are still binding and enforceable, so long as they are not procured by fraud, duress, overreaching or undue influence. *Mack v. Polson Rubber Co.*, syllabus; *Bolen v. Young* (1982), 8 Ohio App.3d 36, 8 OBR 39, 455 N.E.2d 1316; *Kelley v. Kelley* (1991), 76 Ohio App.3d 505, 602 N.E.2d 400.

Thus, when the parties enter into an in-court settlement agreement, so long as the court is satisfied that it was not procured by fraud, duress, overreaching or undue influence, the court has the discretion to accept it without finding it to be fair and equitable. Settlement agreements are favored in the law. Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract. *Spercel*, 31 Ohio St.2d 36, 60 O.O.2d 20, 285 N.E.2d 324. Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement. A party may not unilaterally repudiate a binding settlement agreement. *Id.* In the absence of fraud, duress, overreaching or undue influence, or of a factual dispute over the existence of terms in the agreement, the court may adopt the settlement as its judgment. *Mack v. Polson Rubber Co.*, syllabus; *Kelley v. Kelley; Holland v. Holland* (1970), 25 Ohio App.2d 98, 54 O.O.2d 175, 266 N.E.2d 580; *Ellyson v. Ellyson* (June 11, 1993), Columbiana App. No. 92 C 32, unreported, 1993 WL 205022.

In this case, when Wife refused to go forward with the divorce because she wished to repudiate the in-court settlement agreement, the court, on its own motion, remanded the cause to the referee for the only kind of hearing which was appropriate, namely, to determine whether grounds existed to set the agreement aside. The remand was properly limited to a determination of whether the agreement was procured by fraud, overreaching, undue influence or coercion. Finding none of these factors, the referee recommended that the agreement be enforced. We hold that the trial court did not abuse its discretion in accepting the recommendation of the referee, and in making the in-court settlement agreement part of its judgment.

Similarly, the trial court did not abuse its discretion in accepting the referee's recommendation for the award of $6,000 in attorney fees to Husband from Wife. Although the amount is high, Husband's counsel gave repeated notices to both of Wife's lawyers that in the event Wife tried to repudiate the agreement, he intended to seek attorney fees. All time entries he submitted as evidence of fees sought were limited to the issue of the enforceability of the in-court settlement agreement. We find no abuse of discretion in the award of

these fees. R.C. 3105.18(H); *Birath v. Birath* (1988), 53 Ohio App.3d 31, 33, 558 N.E.2d 63, 66. Moreover, Wife's argument that the referee was without authority to entertain the issue of attorney fees is seriously undercut by her own counsel's request for fees at the same hearing.

Wife's fourth, fifth, sixth, and seventh assignments of error are overruled. Therefore, the judgment of the trial court, in appeal No. C–930681, is affirmed.

In a sole assignment of error, Husband, in his cross-appeal, contests the trial court's order to place $26,000 in escrow. We agree.

██ The trial court erred in requiring the escrow account in the absence of a proper stay and bond executed by Wife, the party seeking to maintain the status quo during the pendency of the first appeal. Civ.R. 62(B); R.C. 2505.09. While the trial court admitted its mistake in open court, it failed to act in conformity with that admission. The court compounded the error, rather than correcting it, when it ordered Husband to post a $13,000 bond as a condition of staying the $26,000 escrow fund. As the court erred in ordering the funds to be placed in escrow, it was without authority to order Husband to post the bond.

Husband's assignment of error, in appeal No. C–940028, is sustained. The trial court's orders requiring the placing of $26,000 in an escrow account and the posting of a $13,000 bond are reversed.

*Judgment accordingly.*

DOAN, P.J., and GORMAN, J., concur.