OPINION
{¶ 1} This appeal arises from a divorce action filed in the Trumbull County Court of Common Pleas, Domestic Relations Division. Appellant, Carl. R. Frohman, appeals the trial court's judgment regarding the division of real and personal property.
 {¶ 2} Appellant and Shirley L. Frohman were married in July 1981. They had two children born of the marriage. On August 6, 1996, appellee, Shirley L. Frohman, filed a divorce complaint. Appellant filed an answer and counterclaim and the matter proceeded as a contested divorce action.
 {¶ 3} The case was tried before Family Court Magistrate Anthony Natale, with testimony from both parties and other witnesses. The case was heard on four nonconsecutive days between July 17, 1997 and December 31, 1997. At the conclusion of the trial, Magistrate Natale filed an undated magistrate's order on or about January 2, 1998. In a judgment entry filed on January 8, 1998, the trial court adopted the magistrate's order.
 {¶ 4} On January 7, 1998, appellant requested findings of fact and conclusions of law, pursuant to Civ.R. 52 and requested an amended Magistrate's Decision pursuant to Civ.R. 53(E)(2). In a judgment order filed January 9, 1998, the trial court ordered counsel for both parties to submit proposed findings of fact and conclusions of law to the court within thirty days for consideration. Both parties submitted their proposed findings of fact and conclusions of law.
 {¶ 5} In a judgment entry filed February 24, 1998, the trial court adopted the findings of fact and conclusions of law submitted by appellee's counsel in toto. There were no findings of fact and conclusions of law prepared by Magistrate Natale. On appeal, this court reversed and remanded, concluding appellant had been prejudiced by the magistrate's failure to provide written findings of fact and conclusions of law under Civ.R. 52 or to submit an amended magistrate's decision under Civ.R. 53(E)(2) and, without such findings, there was no reasonable basis for adoption of the magistrate's decision.[1]
 {¶ 6} On remand, a magistrate's decision including findings of fact and conclusions of law was issued on January 31, 2001. Appellant filed an objection to the magistrate's decision on February 6, 2001. In a judgment entry dated July 3, 2001, the trial court overruled appellant's objections and found the magistrate's decision to be appropriate, well-founded, and based on the facts presented.
 {¶ 7} Appellant files this appeal asserting three assignments of error. Appellant's first assignment of error is:
 {¶ 8} "The trial court abused its discretion when it defined `during the marriage' differently for different items of property for the purpose of valuing such property."
 {¶ 9} Appellant argues that the trial court abused its discretion when it defined the term "during the marriage" differently for valuing the former marital real estate, the 401(K), and pension plan.
 {¶ 10} R.C. 3105.171(G), governing the division of property, states:
 {¶ 11} "In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage.'"
 {¶ 12} In the present case, the court stated in its judgment entry:
 {¶ 13} "For the purposes of valuing the former marital real estate, this court finds as a matter of law pursuant to O.R.C.3105.171(A)(2) that `during the marriage' shall be the period between the date of the marriage through the date that plaintiff filed her complaint for divorce, August 6, 1996."
 {¶ 14} The judgment entry later states:
 {¶ 15} "For purposes of valuing the Masco hourly savings plan (401(K) plan) and defined contribution plan (pension), this court finds as a matter of law pursuant to O.R.C. 3105.171(A)(2) that `during the marriage' shall be defined as the period between the date of the marriage through the date of the trial on this matter, December 31, 1997. Accordingly, Plaintiff shall receive one-half (1/2) of those monies accumulated during the period stated above pursuant to a qualified domestic relations order."
 {¶ 16} This court has noted that a trial court must choose a specific date for purposes of valuation and use it consistently. In Millerv. Miller, this court noted, "`"a party cannot pick and chose (sic) what dates to valuate certain items of marital property. Valuations of the marital property must be determined as to a specific date (i.e. date of permanent separation, de facto termination of the marriage or date of the final divorce hearing.)"'"[2]
 {¶ 17} This court has also noted that in certain cases it may be necessary for the trial court to use different dates for valuation purposes, particularly when expert appraisals are involved.[3] However, this exception is very limited in scope and, when using different valuation dates, the trial court must clearly set forth its reasoning for doing so.[4]
 {¶ 18} In the present case, the trial court adopted the magistrate's findings of fact and conclusions of law, which were submitted by appellee. The record was devoid of any rationale for the decision by the trial court to adopt two different valuation dates. This court issued a limited remand ordering the trial court to make one determination as to the proper dates defining "during the marriage" or present reasons in support of its decision to establish two time periods. On remand, the trial court submitted to the record, a judgment order setting forth its reasons in support of two separate definitions of "during the marriage." The order states:
 {¶ 19} "The court determines from the testimony that it would be inequitable to use the date of final hearing. Parties separated in August 1996 and from that point forward defendant did not assist plaintiff in paying the monthly mortgage payments, maintenance, repairs or improvements. To allow defendant to reap the benefits without having made any significant financial contribution would have been an abuse of the court's equitable discretion."
 {¶ 20} Thus, we find that the trial court properly supported its finding that two separate definitions of "during the marriage" were required to make an equitable valuation of all assets.
 {¶ 21} Appellant's first assignment of error is without merit.
 {¶ 22} Appellant's second assignment of error is:
 {¶ 23} "The trial court abused its discretion and erred to the prejudice of the appellant when it awarded a parcel of real property to the appellee that was acquired during the marriage and was not found to have been given only to the appellee by clear and convincing evidence."
 {¶ 24} Appellant contends that a parcel of real property is marital property and appellant is entitled to one-half the value of the property. Appellant contends that he provided regular routine maintenance work and, as such, is entitled to a one-half interest in the parcel.
 {¶ 25} Appellant asserts that Helen Bundy, an elderly friend of appellee, was coerced into signing a quit claim deed to appellee when she thought she was signing over a life estate interest in her home. Appellant also asserts that, although Bundy signed the deed in 1991, appellee purposefully did not record the deed until 1996, to prevent Bundy's family and friends from discovering the real estate transfer and notifying her of the alleged fraud. The trial testimony raises the issue of whether Bundy knew she was signing a quit claim deed but there is no evidence that a fraudulent conveyance was ever established.
 {¶ 26} Therefore, we must determine whether the parcel of property was properly deemed separate property by the trial court. Appellee contends that the conveyance was a gift from Bundy and that the evidence established that it was intended for appellee only. Appellee also contends that appellant was paid in cash for any repairs that he made on the house, therefore, further establishing the property as separate. The portion of the findings of fact and conclusions of law relating to the parcel is as follows:
 {¶ 27} "This Court finds that as a matter of law Mrs. Helen Bundy had a donative intent in transferring the property known for street numbering purposes as 2987 Mahan Denman Road, Bristolville, Ohio. This Court further finds that Mrs. Bundy delivered the deed to Plaintiff and that Plaintiff accepted delivery of the deed, although she did not record it until 1996. Accordingly, pursuant to ORC 3105.171(6)(a)(vi) (sic) Plaintiff demonstrated by clear and convincing evidence that the Mahan Denman property is deemed to be separate property and awarded to her."
 {¶ 28} Although not properly corrected by the trial court when it adopted appellee's findings of fact and conclusions of law, the proper statute is R.C. 3105.171(6)(a)(vii). This statute defines separate property:
 {¶ 29} "(6)(a) `Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 30} "***
 {¶ 31} "(vii) Any gift of any real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
 {¶ 32} Traceability of an asset is a fundamental means of determining whether an asset is marital or separate property.[5]
Additionally, in the process of tracing ownership of a particular asset, the trial court must evaluate any claims either party has to ownership such as by gift or contract. Appellee claims that the parcel of land in question was a gift from Bundy. Therefore, appellee had the burden at trial of establishing, by clear and convincing evidence, that Bundy intended the conveyance to be a gift to appellee only.
 {¶ 33} A gift is a voluntary transfer by the donor to the donee without any consideration or compensation.[6] In reviewing whether the conveyance was a gift, we must apply a manifest weight of the evidence standard.[7] Thus, we will defer to the trial court in weighing the evidence and determining the credibility of the witnesses.
 {¶ 34} The record reveals that the property was transferred from Bundy in 1991. A copy of the deed was admitted into evidence and only appellee's name appears on it. Bundy conveyed all of her interest in the parcel but continued to reside there. Bundy testified at trial that she had known appellee since she was a young girl and that appellee maintained all of her finances for her. She also testified that she thought the conveyance permitted her to reside there until her death. Bundy further testified that she knew that appellee and appellant were married and that she wanted appellee to have the property after she died. She also testified that she intended the property to be a gift to appellee only.
 {¶ 35} On cross-examination, it was revealed that Bundy was aware that appellant had been to the home on numerous occasions over several years to do repairs, which included hanging dry wall, repairing the roof, and routine maintenance throughout the house. She testified that appellant was sometimes accompanied by his brother, who assisted in the repairs. Bundy also testified that appellant was paid in cash for his work but that she was not aware of how much he was paid and could not recollect ever paying him herself but that appellee paid him.
 {¶ 36} Appellant maintains that because he performed regular, routine repairs on the parcel of land, it has become marital property. Separate property does not automatically become marital property because one spouse contributed to appreciation of the property.[8] Although appellant contends that he performed routine maintenance on the property, there is evidence that he was paid for that work and, therefore, did not render the parcel marital property through his contribution to its appreciation. Had marital assets been invested in the separate property over the years and both parties expended time and effort in contributing to the appreciation, appellant may have acquired an ownership interest.
 {¶ 37} We find that appellee met the burden of establishing that the parcel was conveyed to her exclusively by clear and convincing evidence. The trial testimony of Bundy establishes her intent to convey the parcel only to appellee and the deed itself contains only appellee's name. Furthermore, although appellant provided routine maintenance on the home, Bundy testified that he had been paid for that work. Therefore, appellant's work on the home, for which he was compensated, did not render the parcel marital property.
 {¶ 38} Appellant's second assignment of error is without merit.
 {¶ 39} Appellant's third assignment of error is:
 {¶ 40} "The trial court abused its discretion by ruling that the marital residence is valued at $37,784.00 (sic) if appellee buys it, but $48,000.00 if appellant buys it."
 {¶ 41} Appellant argues that the trial court erred in placing two different values on the marital property. Both appellee and appellant had appraisals done on the property in preparation for trial. Magistrate Natale did not accept the written appraisals; however, he was informed that appellee's appraisal was for $30,000 and appellant's appraisal was for $48,000. At trial, appellant offered to buy the marital property for $48,000.
 {¶ 42} The magistrate's decision, adopted by the trial court reads:
 {¶ 43} "In the event the defendant is unable to purchased (sic) plaintiff's equitable interest in the former marital real estate for $17,500.00 by February 15, 1998, then this court finds the auditor's valuation of the property of $37,484.00 best reflects its value. In the event plaintiff opts to retain the residence, then she shall pay defendant his equitable interest in the property of $12,367.00 within one hundred twenty (120) days of February 15, 1998, or the house will be sold and the net proceeds divided equally using the date of the marriage through August 6, 1996, to value defendant's equitable interest."
 {¶ 44} It is clear from the trial testimony that appellant made an offer to purchase the marital real estate for $48,000 provided he could obtain financing. Appellee then accepted the offer. It is within the trial court's discretion to accept an in-court settlement agreement, regardless of whether it is fair and equitable and absent a showing of duress.[9] Therefore, the court did not abuse its discretion when it accepted a settlement offer from appellant to purchase the marital property for $48,000 provided he could obtain financing.
 {¶ 45} Moreover, the trial court did not abuse its discretion when, in the judgment entry, it ultimately did not choose either appraisal figure but rather used the Trumbull County Auditor's valuation of $37,484 as the proper value of the property.
 {¶ 46} Although appellant made an in-court offer to purchase the property for $48,000, the trial court was not bound by that figure in determining the value of the property should appellee choose to purchase the property if appellant is unable.
 {¶ 47} Appellant's third assignment of error is without merit.
 {¶ 48} The judgment of the trial court is affirmed.
JUDITH A. CHRISTLEY and ROBERT A. NADER, JJ., concur.
[1] Frohman v. Frohman (Mar. 31, 2000), 11th Dist. No. 98-T-0131, 2000 Ohio App. LEXIS 1460.
[2] Miller v. Miller (May 24, 1996), 11th Dist. No. 95-G-1942, 1996 Ohio App. LEXIS 2188, at *3-4 quoting Landry v. Landry (1995),105 Ohio App.3d 289, quoting Moll v. Moll (June 17, 1993), 3d Dist. Nos. 16-92-27, 16-92-30, 1993 Ohio App. LEXIS 3027.
[3] Id.
[4] Id.
[5] Okos v. Okos (2000), 137 Ohio App.3d 563, 584.
[6] In re: Estate of Kenney (May 13, 1993), 2d Dist. No. 13384, 1993 WL 169113, at *1.
[7] Id. at *2.
[8] Simoni v. Simoni (1995), 102 Ohio App.3d 628, 639.
[9] Walther v. Walther (1995), 102 Ohio App.3d 378.