[Cite as *Jackson v. Jackson*, 2013-Ohio-3521.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| NAOMI JACKSON | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. 12CA28 |
| BRENT JACKSON | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Richland County Court of
Common Pleas, Domestic Relations
Division Case No. 2010 DIV 1540



JUDGMENT:           AFFIRMED




DATE OF JUDGMENT ENTRY:    March 29, 2013




APPEARANCES:

For Appellant:                          For Appellee:

R. PAUL CUSHION, II               CHARLES T. ROBINSON
75 Public Square, Suite 1111      3 N. Main St., Suite 400
Cleveland, OH 44113-2083        Mansfield, OH 44902

*Delaney, P.J.*

{¶1}   Plaintiff-Appellant Naomi Jackson appeals the March 8, 2012 judgment entry denying her Motion to Set Aside Settlement Agreement and/or Vacate Judgment and dismissing her Motion for Contempt and Motion to Modify Parenting Time.

### FACTS AND PROCEDURAL HISTORY

{¶2}   Plaintiff-Appellant Naomi Jackson ("Wife") and Defendant-Appellee Brent Jackson ("Husband") were married on July 27, 2005.  Two minor children were born as issue of the marriage.

{¶3}   Wife filed a Complaint for Divorce on December 28, 2010.

{¶4}   The matter was set for a trial on July 14, 2011.  In lieu of trial, the parties reached a settlement agreement.  On July 14, 2011, the trial court went on the record and questioned the parties as to the terms of the settlement agreement to ensure it was a reflection of their voluntary agreement.  The parties agreed to a divorce on the grounds of incompatibility.  The settlement agreement stated as to the division of marital property to Wife:

> Also Defendant to pay to wife the sum of $10,000.00 over a period of 24 months.  If Defendant can pay it sooner he may and is encouraged to. At the least, [Defendant] shall pay $5,000 in 12 months.  Plaintiff shall also receive the amount of $25,000.00 from the Defendant's 401(K) to be by a QDRO.

{¶5}   During the marriage, Wife applied for private student loans to fund her college and graduate education.  In the settlement agreement, Wife agreed to be responsible for her student loan debt.

{¶6} The settlement agreement was filed with the court on July 20, 2011.

{¶7} After the July 14, 2011 hearing, Wife realized she could not immediately withdraw the $25,000 from Husband's 401(K) plan. Husband is enrolled in an employee benefits plan entitled the "B Plan" at his place of employment. The "B Plan" does not permit a withdrawal from the fund by an alternate payee until the employee's retirement or separation from employment. Based on this discovery, Wife filed a Motion to Set Aside Settlement and/or Vacate Judgment on September 7, 2011. In the motion, she alleged the settlement agreement should be set aside due to accident, misrepresentation, or fraud. During the settlement negotiations, it was Wife's understanding from the attorneys in the case she could obtain the money from Husband's 401(K) plan within thirty to sixty days from the divorce. She stated she would not have consented to the settlement if she had known the money from the 401(K) would not be available until Husband retired. (Wife's Affidavit, Motion to Set Aside Settlement and/or Vacate Judgment.) She averred Husband knew he was enrolled in the "B Plan" and was aware of the terms of the employee benefits plan.

{¶8} Wife filed an Amended Motion to Set Aside Settlement and/or Vacate Judgment on November 2, 2011. In the motion, she further claimed Husband engaged in fraud by causing her student loans to be defaulted and accelerated. During the marriage, Wife applied for private student loans so she could complete her undergraduate and graduate education. Husband told Wife to take care of the applications. Wife's understanding was she had his permission to sign his name to the loan applications as a guarantor as she had signed his name to prior financial documents.

{¶9}   Husband was aware that Wife had private student loans, but he was not aware she had signed his name to the applications as guarantor.   Wife admitted Husband did not specifically say she could sign his name to the applications.   Prior to the July 2011 hearing, Husband obtained his credit report and saw Wife's student loans on the report.   In August 2011, after the settlement agreement hearing, Husband contacted the lenders funding the private student loans and stated Wife had signed his name to the loan applications as a co-signer without his authorization.   The lenders gave Husband a fraud packet where he was required to file a police report.   Based on the information Husband provided to the lenders, the lenders declared the loans fraudulent, defaulted the loans, and accelerated the payments.   The student loans had originally been deferred until Wife completed her master's degree, which she was still in the process of taking classes in order to complete.

{¶10} The trial court held a hearing on the Motions to Set Aside Settlement and/or Vacate Judgment on January 30, 2012.

{¶11} On February 29, 2012, Wife filed an Ex Parte Motion to Modify Parenting Time.   In the motion, Wife moved to suspend Husband's parenting time of their minor children due to allegations of abusive behavior towards the children by Husband.   The trial court ruled on the motion on the same day, stating based on the motion and a status conference with counsel, it would hold a temporary order hearing on May 31, 2012 to allow Children Services to complete its investigation.

{¶12} The trial court issued its lengthy judgment entry on March 8, 2012.   In the judgment entry, the trial court considered the evidence and law presented and determined Wife did not meet the elements of Civ.R. 60(B).   The judgment entry also

ordered the contempt actions and motions to modify temporary orders to be found moot and dismissed them. The trial court stated Wife could file a Motion to Modify Parenting Time post-decree.

{¶13} The Final Decree of Divorce was filed on March 28, 2012.

{¶14} It is from the March 8, 2012 judgment entry Wife now appeals.

## ASSIGNMENTS OF ERROR

{¶15} Wife raises two Assignments of Error:

{¶16} "I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION PURSUANT TO OHIO RULES OF CIVIL PROCEDURE, RULE 60(B) TO SET ASIDE THE SETTLEMENT AGREEMENT OF THE PARTIES AND/OR TO VACATE ANY DECREE INCORPORATING THE AGREEMENT.

{¶17} "II. THE TRIAL COURT ERRED IN DISMISSING THE PLAINTIFF'S CONTEMPT MOTION AND MOTION TO MODIFY PARENTING TIME WITHOUT THE OPPORTUNITY FOR A HEARING AND PRESENTATION OF EVIDENCE, SIMPLY FINDING THAT, BASED UPON THE DECISION TO OVERRULE TO 60(B) MOTION, THE ISSUE WAS MOOT."

## ANALYSIS

### I.

{¶18} Wife argues in her first Assignment of Error that the trial court abused its discretion in denying her Motions to Set Aside Settlement and/or Vacate Judgment. We disagree.

## Standard of Review

{¶19} The decision whether to grant a motion for relief from judgment under Civ.R. 60(B) lies within the trial court's sound discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 514 N.E.2d 1122 (1987). In order to find abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, (1983).

{¶20} A party seeking relief from judgment pursuant to Civ.R. 60(B) must show: "(1) a meritorious defense or claim to present if relief is granted; (2) entitlement to relief under one of the grounds set forth in Civ.R. 60(B)(1)-(5); and (3) the motion must be timely filed." *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. A failure to establish any one of these three requirements will cause the motion to be overruled. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988); *Argo Plastic Prod. Co. v. Cleveland,* 15 Ohio St.3d 389, 391, 474 N.E.2d 328 (1984).

{¶21} Wife brought her motion to vacate under Civ.R. 60(B)(1), (2), (3), and (4). Civ.R. 60(B) states in pertinent part,

> On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment, order or proceedings for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the

judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered to taken.

{¶22} On July 14, 2011, Wife and Husband entered into the settlement agreement in the trial court's presence. "Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract." *Tyron v. Tyron*, 11th Dist. No. 2007-T-0030, 2007-Ohio-6928, ¶ 23 citing *Walther v. Walther*, 102 Ohio App.3d 378, 383, 657 N.E.2d 332 (1st Dist.1995). "In the absence of fraud, duress, overreaching or undue influence, or of a factual dispute over the existence of terms in the agreement, the court may adopt the settlement as its judgment." *Walther* at 383, 657 N.E.2d 332. "The enforceability of an in-court settlement agreement depends upon whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced." *Tyron* quoting *Franchini v. Franchini*, 11th Dist. No. 2002-G-2467, 2003-Ohio-6233, ¶ 9, citing *Normandy Place Assoc. v. Beyer*, 2 Ohio St.3d 102, 105-106, 443 N.E.2d 161 (1982). As with usual contract interpretation, the court's role is to give effect to the intent of the parties. The court must examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, the court looks to the plain and ordinary meaning of the

language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Sunoco, Inc. (R & M) v. Toledo Edison, Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

<u>Availability of Funds from Husband's 401(K)</u>

{¶23} Wife first contends the trial court should vacate the settlement agreement because it was her intent and understanding the funds from Husband's 401(K) would be available to her within thirty to sixty days from the date of divorce, not at the time of Husband's retirement. Her basis for vacating the settlement agreement is under Civ.R. 60(B)(1) or (3). Civ.R. 60(B)(1) states a party may be granted relief from judgment if there was "mistake, inadvertence, surprise or excusable neglect." Civ.R. 60(B)(3) provides there may be relief from a judgment if there is "a fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party."

{¶24} The trial court reviewed the evidence presented at the January 31, 2012 evidentiary hearing on the motion to vacate to find that Wife was not entitled to relief on the issue of the 401(K). We have reviewed the evidence and have reached the same conclusion that Husband did not perpetrate a fraud as to the withdrawal terms of his 401(K), nor did the parties engage in a mutual mistake as to the withdrawal terms of the Husband's 401(K). The testimony at the hearing revealed the following. Before

the parties' marriage in 2005, Husband was a member of the "Plan B" employee benefits plan. There is also a "Plan A" employee benefits plan, but both plans do not permit early withdrawal by an alternate payee. During the settlement negotiations on July 14, 2011, Wife did not discuss the terms of the 401(K) with Husband, but consulted with her own attorney. Wife and her counsel did not discover the terms of the 401(K) before the July 14, 2011 settlement agreement, but after the settlement agreement had been entered into. This Court has emphasized that "[n]either a change of heart nor poor legal advice is a ground to set aside a settlement agreement." *Pastor v. Pastor*, 5th Dist. No. 04 CA 67, 2005–Ohio–6946, ¶ 18, citing *Walther v. Walther*, 102 Ohio App.3d 378, 383, 657 N.E.2d 332 (1st Dist.1995). We cannot find mutual mistake between the parties; the trial court conjectured there could be a unilateral mistake on the part of Wife. Unilateral mistake can be grounds for the rescission of a contract, but "relief for unilateral mistake will not be granted where the party seeking relief bore the risk of mistake or where the mistake is the result of that party's negligence. *Id.* at ¶ 38, citing *Convenient Food Mart, Inc. v. Con. Inc.*, 11th Dist. No. 95–L–093 (Sept. 30, 1996)." *State ex rel. BDFM v. Ohio Dept. of Transp.*, 10th Dist. No. 11AP-1094, 2013-Ohio-107, ¶ 66.

{¶25} The trial court further reviewed the four corners of the settlement agreement to determine if the terms were ambiguous. The settlement agreement states:

Also Defendant to pay to wife the sum of $10,000.00 over a period of 24 months. If Defendant can pay it sooner he may and is encouraged to. At the least, [Defendant] shall pay $5,000 in 12 months. Plaintiff shall

also receive the amount of $25,000.00 from the Defendant's 401(K) to be

by a QDRO.

{¶26} Wife argues this provision meant Wife received $35,000 from Husband within 24 months. The trial court found however, and we agree, the parties only set a definitive time limit as to when Wife would receive $10,000. The settlement agreement is silent as to the date Wife was to receive $25,000 from Husband's 401(K). The parties included definite dates as to the time Wife was to receive certain funds from Husband, but within the same paragraph, the parties did not include a deadline as to the 401(K) payment. Wife will receive $25,000 from Husband's 401(K) plan, but not on the time-line Wife allegedly intended at the time of settlement.

Fraudulent Student Loan Applications

{¶27} Wife next argues Husband's actions in declaring her student loan applications to be fraudulent and her subsequent default on those loans should be a basis for vacating the settlement agreement. Per the terms of the settlement agreement, Wife is responsible for her student loans. Her basis for relief is under Civ.R. 60(B)(2), which states "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B)," and Civ.R. 60(B)(4) that states, "the judgment * * * is no longer equitable that the judgment should have prospective application." She argues Husband caused Wife to be unable to perform the terms of the settlement agreement.

{¶28} Prior to the settlement agreement, Husband was aware of the student loans. After the hearing, Husband contacted the lenders to remove his names from the loans because he did not authorize his signature on the loan applications. The

lenders defaulted the loans and accelerated the payments after Husband completed their fraud packets, which included a police report.

{¶29} At the January 31, 2012 evidentiary hearing, Wife admitted Husband did not specifically give her permission to sign his name as guarantor for her student loan application. The trial court found the default of the student loans was a natural consequence of Wife's actions and could not be a basis for vacating the settlement agreement. The trial court is in the best position to review the evidence and consider the testimony of the witnesses. Both Husband and Wife testified at the evidentiary hearing. The student loan applications were also the subject of an evidentiary hearing in the parties' Domestic Relations Protection Order proceedings before the same judge. The trial court referred to the testimony raised in that hearing during the January 31, 2012 evidentiary hearing. Wife makes specific citation to the testimony from the hearing in the Domestic Relations Protection Order proceedings in her appellate brief, but the transcript of that hearing was not made part of this record and we cannot consider it.

{¶30} Civ.R. 60(B)(4) "was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control." *In re Yates*, 4th Dist. Nos. 05CA19 and 05CA20, 2006-Ohio-2761, ¶ 20, quoting *Knapp v. Knapp*, 24 Ohio St.3d 141, 146, 493 N.E.2d 1353 (1986). The trial court determined the evidence showed Wife caused her circumstances by signing Husband's name to the documents without his specific authorization. We find no abuse of discretion in the trial court's conclusion Wife is not entitled to relief from judgment as to the student loans.

{¶31} Wife's first Assignment of Error is overruled.

## II.

{¶32} Wife argues in her second Assignment of Error that the trial court erred when it found the contempt actions and any motions to modify parenting time moot and therefore dismissed them in the March 8, 2012 judgment entry. We disagree.

### Contempt Motions

{¶33} As a first matter, the record in this case and Wife's appellate brief are unclear as to what contempt order Wife is appealing the dismissal thereof. Wife references no date or details of the contempt motion upon which this Court can base its review. Pursuant to App.R. 16, Wife must include in her appellate brief, "[a] statement of the issues presented for review, with references to the assignments of error to which each issue relates[;] [a] statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule; [and] [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(4), (6), and (7).

{¶34} "it is the duty of the appellant, not this court, to demonstrate [her] assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Taylor*, 9th Dist. No. 2783-M, 1999 WL 61619(Feb. 9, 1999) at *3. "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate

courts is a tactic which is ordinarily fatal." *Kremer v. Cox* , 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (9th Dist. 1996).

<u>Ex Parte Motion to Modify Parenting Time</u>

{¶35} On February 29, 2012, Wife filed an Ex Parte Motion to Modify Parenting Time.  In the motion, Wife moved to suspend Husband's parenting time of their minor children due to allegations of abusive behavior towards the children by Husband.  The trial court ruled on the motion on the same day, stating based on the motion and a status conference with counsel, it would hold a temporary order hearing on May 31, 2012 to allow Children Services to complete its investigation.

{¶36} In the March 8, 2012 judgment entry, the trial court stated any motions to modify temporary orders were moot and dismissed.  It stated Wife could file a motion to modify parenting time post-decree.  The Final Decree of Divorce was filed on March 28, 2012.

{¶37} Wife argues the trial court erred in making such a decision.

{¶38} In support of her argument, Wife refers to matters outside the record in the present appeal, such as a previous Domestic Relations Protection Order hearing. This evidence cannot be considered by this Court because it is not part of the record. Further, we find no evidence the arguments made in the appellate brief were raised before the trial court and made part of the immediate appeal.

{¶39} On the record before us, we can find no abuse of discretion in the trial court ruling the issues were moot, dismissed, and/or could be raised post-decree.

{¶40} Wife's second Assignment of Error is overruled.

## CONCLUSION

{¶41} The two Assignments of Error of Plaintiff-Appellant Naomi Jackson are overruled.

{¶42} The judgment of the Richland County Court of Common Pleas, Domestic Relations Division, is affirmed.

By: Delaney, P.J.

Hoffman, J. and

Farmer, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER

PAD:kgb

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| NAOMI JACKSON | : | |
| Plaintiff - Appellant | : | JUDGMENT ENTRY |
| -vs- | : | |
| BRENT JACKSON | : | Case No.    12CA28 |
| Defendant - Appellee | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Richland County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER